# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EILEEN COONCE,<br><br>Plaintiff,<br><br>v.<br><br>AUTOMOBILE CLUB OF AMERICA, et al.,<br><br>Defendants. | Case No. CIV-17-279-RAW |

## ORDER

Before the court is the motion of defendant CSAA Fire & Casualty Insurance Company ("CSAA") to dismiss. This lawsuit proceeded in the District Court for Wagoner County, when plaintiff filed her amended petition on May 9, 2017. The case was removed to this court on July 17, 2017 by CSAA as the only defendant served at the time. The record at this time does not reflect service on two other named defendants, Automobile Club of America and AAA Fire & Casualty Insurance Company. Plaintiff sues CSAA for breach of contract and bad faith.

Under Rule 12(b)(6), the court must assume the truth of plaintiff's well-pleaded facts and draw all reasonable inferences from them in the light most favorable to plaintiff. *Western Watershed Project v. Michael,* 869 F.3d 1189, 1193 (10th Cir.2017). To overcome a motion to dismiss, a complaint must plead facts sufficient to state a claim to relief that is plausible on its face. *Sylvia v. Wisler,* 2017 WL 5622916, *4 (10th Cir.2017). A claim is facially plausible if the plaintiff has pled factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The degree

of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2) F.R.Cv.P. depends on the type of case. *Robbins v. Oklahoma,* 519 F.3d 1242, 1248 (10th Cir.2008).

There are certain documents outside the pleadings that a court may consider without converting a Rule 12(b)(6) motion to one for summary judgment. If the insurance policy is integral to and referenced in the complaint, it may be so considered. *See Wise v. CSAA Gen. Ins. Co.,* 2016 WL 1732746 n.1 (N.D.Okla.2016)(citing *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384-85 (10th Cir.1997). Defendant has attached a copy of the policy to its motion, and plaintiff has not disputed the authenticity of the copy. The court will consider it. *See Tilley v. Maier,* 495 Fed.Appx. 925, 927 (10th Cir.2012).

Plaintiff alleges that the pertinent residence in Broken Arrow, Oklahoma was insured by CSAA. On February 15, 2014, the ceiling of the residence collapsed. Plaintiff made a claim under the policy and CSAA denied the claim. The elements of a breach of contract claim are (1) formation of a contract, (2) breach of the contract, and (3) damages as a direct result of the breach. *Digital Design v. Information Builders,* 24 P.3d 834, 843 (Okla.2001). Defendant's argument in the present motion is that plaintiff has not plausibly alleged a breach of contract under the policy language.

The second amended complaint alleges that the "collapse is covered under the policy, in Section E-8 – Collapse." (#18 at 5, ¶25), that the denial of the claim "[i]s a breach of the contract in that the policy specifically provided coverage for collapse as provided in **E.8**."

(*Id.* at ¶26), and that "nothing in the policy excludes coverage of collapse due to nail failure." (*Id.* at ¶27). Earlier, plaintiff had alleged that an engineering firm "concluded that the ceiling collapsed because the nails did not hold." (*Id.* at ¶23). Also, that the basis for defendant's denial of the claim was "normal wear and tear." (*Id.* at ¶18).

Defendant makes a broader interpretive argument, and a narrower one. The broad argument is that this incident does not constitute a "collapse" under the general definition provided in the policy. The definition is as follows: "collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose." (#23-1 at page 21 of 75, ¶8(a)(1)). The second amended complaint alleges that the ceiling collapse resulting in "that part of the building not being able to be occupied for its current intended purpose." (*Id.* at ¶13).

Defendant points to Paragraph 8(a)(3) of the policy, which provides as follows: "A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building." Defendant argues it is dispositive that "[i]n this case, Plaintiff makes no allegation that any other part of the building structure has been damaged or compromised, other than the fact that the ceiling has separated and fallen in places from the rest of the building structure. There is no allegation in the Second Amended Complaint that the portion of the building from which the ceiling separated and fell is not standing." (#23 at page 15 of 25, in CM/ECF pagination). The court disagrees, or at least

3

finds the policy language ambiguous on this point.

Defendant cites cases in which courts held that *a building* had not collapsed because *the building* was still standing. The case at bar is distinguishable, as is evident from one of the cases upon which defendant relies, *Travelers Home and Marine Insurance Company v. Walsh,* 2017 WL 976396 (N.D.Ill.2017). In a final footnote, the court stated: "Because collapse of a *part* of building is covered by the Policy, one might wonder what must be shown to demonstrate coverage where part has collapsed and part is standing. Fortunately, that issue is not before this court." *Id.* at n.6. That issue is, however, before this court.

The general definition states that collapse is an "abrupt falling down or caving in of a building *or any part of a building."* (Emphasis added). The ceiling is part of a building. Defendant appears to wish to argue that *a portion* of the ceiling fell (or "separated") and thus there is no coverage under Paragraph 8(a)(3). This a factual issue which the court cannot resolve on a motion to dismiss. Also, the policy language is ambiguous. Does Paragraph 8(a)(3) logically apply to a ceiling? If so, is the ceiling still "standing" if (for example) less than 50% of it has fallen? Under the applicable standard, the court declines to grant a motion to dismiss on this basis.

Defendant's narrower argument is to reference Paragraphs 8(b)(1) though (6) of the policy. These limit coverage for collapse to six perils or causes of loss. In the second amended complaint, plaintiff does not specifically reference any of these provisions. Defendant posits that the only one possible applicable is (b)(6), "[u]se of defective material

or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation." Defendant argues that inasmuch as no "construction, remodeling or renovation" was going on at the time the ceiling fell, this provision cannot apply.

The facts of the matter are somewhat unclear. The second amended complaint alleges that "the ceiling collapsed because the nails did not hold." (#18 at 5, ¶23). This statement does not specify if the nails themselves failed, or if the surrounding material failed. Paragraph (b)(2) provides coverage for collapse caused by "[d]ecay that is hidden from view". Paragraph (b)(3) provides coverage for collapse caused by "[i]nsect or vermin damage that is hidden from view". In keeping with the Rule 12(b)(6) standard of viewing the complaint in the light most favorable to plaintiff, an inference of possible coverage is plausible.

As stated, however, in a case of this type, the Tenth Circuit permits consideration of the policy itself. The rationale is that to hold otherwise would allow parties to survive a motion to dismiss simply by failing to attach a dispositive document in favor of characterizing the document in a beneficial light without regard to the actual document. *See MacKinney v. Allstate Fire and Casualty Ins. Co.,* 2016 WL 70334977, *5 (D.Colo.2016)(citing *GFF Corp.,* 130 F.3d at 1385.). The court therefore concludes that the burden is on plaintiff to specifically allege the provision of the policy that provides coverage. While plaintiff has cited the provision providing coverage for "collapse," she has not pointed

5

to any of the more specific provisions dealing with the issue. Plaintiff alleges that "nothing in the policy excludes coverage of collapse due to nail failure," but the pertinent point is that nothing in the policy provides coverage for collapse under the facts alleged. Paragraph 8(b) is exhaustive as to collapse causation coverage. Insurance policies are contracts interpreted as a matter of law. *BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.,* 148 P.3d 832, 835 (Okla.2005). When policy provisions are unambiguous and clear, the employed language is accorded its ordinary, plain meaning. *Id.* The court will not impose coverage where the policy language clearly does not intend that a particular individual or risk should be covered. *Id.* at 835-36. On the other hand, because insurance policies are contracts of adhesion, ambiguous terms are interpreted against the party drafting the policy. *Porter v. Okla. Farm Bureau Mut. Ins. Co.,* 330 P.3d 511, 515 (Okla.2014). The court does not find the provisions in Paragraph 8(b) ambiguous. The pending motion will be granted as to breach of contract.

The breach of contract claim being dismissed, the court will likewise dismiss plaintiff's bad faith claim. *See Davis v. GHS Health Maint. Org.,* 22 P.3d 1204, 1210 (Okla.2001)("a determination of liability under the contract is a prerequisite to a recovery for bad faith breach of an insurance contract"); *see also Ball v. Wishire Ins. Co.,* 221 P.3d 717, 724 (Okla.2009)(essential element of a bad faith claim is that "claimant is entitled to coverage under the insurance policy").

It is the order of the court that the motion to dismiss (#23) is hereby granted.

**IT IS SO ORDERED** this 12th day of DECEMBER, 2017.

_____
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**